The undersigned have reviewed the award based upon the record of the proceeding before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence as a whole, the undersigned reach the same facts and conclusions as those reached by the deputy commissioner, with some minor technical modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
 ***********
Accordingly, the undersigned find as fact and conclude as matters of law the following, which were entered into by the parties at the initial hearing as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. The North Carolina School Board's Insurance Trust is the carrier on the risk.
4. Plaintiff's average weekly wage was $112.73, yielding a compensation rate of $75.16.
5. The date of plaintiff's claimed injury was September 21, 1995.
6. Plaintiff's medical records have been stipulated and have been submitted in a bound and tabbed packet.
7. The issues to be determined are whether plaintiff's lower back problems were caused by an injury sustained by her in a school bus accident; and if so, whether she is entitled to temporary total disability benefits for that injury.
 ***********
Based upon all of the competent, credible, and convincing evidence of record and reasonable inferences drawn therefrom, the undersigned make the following additional
 FINDINGS OF FACT
1. Plaintiff, at the time of the initial hearing, was a forty-five year old female who had been employed as a school bus driver for the Henderson County Schools.
2. On September 21, 1995, plaintiff was involved in a motor vehicle accident. Plaintiff's school bus was struck on the driver's side by a pickup truck.
3. Plaintiff was referred by her employer to Dr. John Lange, M.D., an occupational health physician located in Hendersonville, North Carolina. Plaintiff presented to Dr. Lange on September 22, 1995, with complaints of low back and left hip pain radiating down the posterior thigh and up to the mid back.
4. Plaintiff was again treated by Dr. Lange on October 3, 1995, February 2, 1996, February 22, 1996, and April 15, 1996.
5. Prior to the September 21, 1995 accident date, plaintiff was being treated by Dr. Christian Estes, M.D., an orthopaedic surgeon in Hendersonville, North Carolina, for a serious left ankle injury as well as for other pain-inducing injuries sustained in an unrelated automobile accident.
6. On November 22, 1995, plaintiff, without authorization, began obtaining consultation and treatment from Dr. Estes for lower back pain and left leg pain and numbness, which she attributed to the September 21, 1995 bus accident.
7. Plaintiff's medical history, as revealed in her medical records with Dr. Estes, indicates that she complained of symptoms to her lower back and left leg as far back as February 23, 1983. Prior to the bus accident of September 21, 1995, plaintiff had been diagnosed by Dr. Estes as suffering from fibromyalgia and reflex sympathetic dystrophy (RSD).
8. Per Dr. Estes' order, plaintiff underwent an MRI in January of 1996. According to Dr. Estes, plaintiff's MRI demonstrated degenerative disc changes at L5-S1 and a mild disc bulge.
9. Plaintiff also had an MRI performed prior to the work-related accident by order of Dr. Estes. This MRI had shown a central disc protrusion at L5-S1.
10. On December 16, 1996, plaintiff underwent an electromyography and nerve conduction (EMG/NCV) study performed by Dr. Terence B. McGhee of Mountain Neurological Center. The purpose of this study was to detect ongoing or past nerve injury. Dr. Estes interpreted the EMG as normal. The nerve conduction study interpretation was also normal. PNCV studies, including late responses of the left peroneal and left posterior tibial nerves were normal. There was no evidence of neuropathy or radiculopathy in the left lower extremity.
11. Plaintiff continued to work with defendant-employer until October 12, 1995 when she took leave to have surgery for an ankle injury sustained in the unrelated automobile accident.
12. There was no period of time in 1995 in which plaintiff was unable to work as the result of the September 21, 1995 accident.
13. Any incapacity to earn wages on plaintiff's part was not caused by an injury sustained on September 21, 1995. The lack of significant change shown by plaintiff's MRI series and the normal results of the EMG/NCV objectively demonstrate that the bus accident had little physical effect on plaintiff and did not lead to any incapacity to earn wages.
14. There is no convincing causal connection between plaintiff's complaints and the injury sustained in the September 21, 1995 accident.
15. Plaintiff has a long history of chronic pain. Her medical records have many references to pain disorders and the attempts of her doctors to alleviate her discomfort. Her history of pain, including pain in the lower back and left leg, predates the September 21, 1995 injury by many years. The pain that plaintiff complains of on or after the September 21, 1995 accident is not significantly different from her complaints in prior years.
16. Plaintiff's left leg and back problems are essentially the same as they have been for a number of years and are not the result of any aggravation of acceleration of previous injuries or conditions.
17. Plaintiff's medical records demonstrate that she has had a number of unfortunate accidents. On February 23, 1983, she fell off a porch and injured her back. On April 19, 1984, she tripped at work and injured her back, knee, and hip. On June 30, 1993, she injured her ankle on a step. During February of 1994, she suffered a serious ankle injury as well as other pain-inducing injuries in an automobile accident. On September 21, 1995, she was involved in the bus accident at issue. During May of 1996, she slipped and fell, injuring her knee. Finally, on August 7, 1996, she fell. These incidents are all reflected in plaintiff's medical records.
18. Dr. Elkins has concluded that plaintiff is a malingerer. Dr. Estes, plaintiff's doctor of choice, had also found the plaintiff in the past as being not overly conscientious in helping herself to heal by exercising and losing weight.
19. Dr. Lange, plaintiff's treating physician, also questioned plaintiff's complaints. Her complaints were, in his view, overstated if not spurious.
20. When Dr. Lange was asked if he agreed with Dr. Estes that plaintiff's accident of September 21, 1995, exacerbated her prior lower back condition, he responded as follows:
 "To answer your question, I find it very difficult to believe that it substantially or really in any case exacerbated her underlying problem that had been going on for eighteen years and for which she had been treated in the very recent past immediately before the injury for similar complaints and, with no difference in the findings and no new findings, I couldn't put any credence to that. No, I don't think that's correct, I did not agree with him."
21. According to Dr. Lange, plaintiff was malingering in the sense that she exaggerated her symptoms. The undersigned accept his opinions as credible and convincing.
22. The opinions of Dr. Lange also are corroborated by those of Dr. Robert Elkins, M.D., a board certified orthopaedic surgeon, with thirty years experience in workers' compensation evaluations. On March 12, 1997, Dr. Elkins conducted a medical examination of plaintiff and a review of her medical records. Dr. Elkins found plaintiff's subjective complaints out of proportion to the objective medical findings. The objective findings included Dr. Elkins' personal observations of plaintiff's reaction to physical examination.
23. Dr. Elkins concluded that plaintiff did not have any significant aggravation to her back and/or left leg secondary to the bus accident of September 21, 1995 and that plaintiff could drive a school bus as she did prior to the accident.
24. Plaintiff's testimony is not viewed as wholly credible or convincing to the undersigned due to inconsistencies in her testimony, her unusual and non-credible views and opinions regarding physicians who treated her, and based upon her demeanor and appearance at trial, as Deputy Commissioner Hoag ultimately noted and to which the undersigned defer in this case.
25. Plaintiff viewed Dr. Lange as an incompetent physician because he did not take x-rays immediately and did not diagnose her with a fracture of the sacrum. There is no credible or convincing evidence that plaintiff has ever suffered from a fracture of the sacrum. Plaintiff insists that she not only had an injury to the sacrum, but that Dr. Lange did not inform her about it.
26. Plaintiff's case worker was Delores Parker. Ms. Parker found it difficult to work with the plaintiff and also difficult to contact the plaintiff. Plaintiff insisted to Ms. Parker that Dr. Lange had lied to her about the results of an x-ray and had refused to tell her about her fractured sacrum.
27. Plaintiff insists she had few, if any, problems prior to the bus accident. However, she did suffer from a prior back injury while she was nursing in the fall of 1984. In addition, plaintiff maintains she has a swelling in her lower back although there is no evidence to support this claim. In addition, medical records of Dr. Estes indicated no change in plaintiff's x-rays.
 ***********
The foregoing findings of fact and conclusions of law engender the following additional
 CONCLUSIONS OF LAW
1. Plaintiff's prior injuries to her back were not exacerbated by, or related to, her traffic accident in 1995. Plaintiff did not suffer from any period of temporary total disability or further injury or exacerbation of any of her previous conditions as a result of the September 21, 1995 bus accident. N.C.G.S. § 97-2(6).
2. Plaintiff's testimony regarding her period of disability is not credible or convincing. In passing upon issues of fact, the Industrial Commission is the sole judge of the credibility of witnesses and the weight to be given to their testimony. The Commission may accept or reject the testimony of a witness solely on the basis of whether it believes the witness.
Hillard v. Apex Cabinet Company, 305 N.C. 593, 595,290 S.E.2d 682 (1982).
3. Plaintiff's request for temporary total disability must be and hereby is DENIED.
N.C.G.S. § 97-29.
4. Plaintiff's request for a change of physician is DENIED. The approval of a change of physician is within the discretion of the Commission and does not appear to be warranted in this case.Franklin v. Broyhill Furniture Industries, 123 N.C. App. 200,472 S.E.2d 382 (1996).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following
 ORDER
1. Since plaintiff's claim is necessarily denied, she is not eligible for payment of any temporary total disability or to compensation for further medical treatments.
2. Each side shall hear its own costs.
This case is ORDERED REMOVED from the Full Commission hearing docket.
This the ___ day of January, 1999.
 S/_________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/______________________ BERNADINE S. BALLANCE COMMISSIONER